## CASE *v.* VEARRINDY.

1. EVIDENCE—RECORDS MADE IN REGULAR COURSE OF BUSINESS—
   HOSPITALS—HEARSAY.
   Hospital records come within purview of statute rendering ad-
   missible in evidence a memorandum of any act, transaction,
   occurrence or event, made in the regular course of business
   but portions of such records which do not refer to acts,
   transactions, occurrences or events incident to the hospital
   treatment are hearsay and inadmissible (CL 1948, § 617.53).

2. SAME—RES GESTAE—EXCLAMATORY STATEMENTS.
   Testimony as to an exclamatory statement made by a decedent,
   not made coincident with the happening of the event to which
   it related, is not admissible under the *res gestae* rule.

3. SAME—RES GESTAE.
   *Res gestae* are the circumstances, facts and declarations which
   grow out of the main fact, are contemporaneous with it, and
   serve to illustrate its character.

4. PHYSICIANS AND SURGEONS—CHIROPRACTOR—MALPRACTICE—RES
   GESTAE.
   Testimony of doctor of medicine concerning exclamation made to
   him by decedent when he first disclosed to her the serious
   condition of her breast cancer and necessity for immediate
   treatment that she was not going to do anything about it
   as defendant, a chiropractor, said it was getting better *held,*
   properly excluded, as not a part of the *res gestae* in malprac-

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur, Evidence § 1043.
[1] Admissibility of hospital chart or other hospital record.   75
    ALR 378, 120 ALR 1124.
[2, 4] 20 Am Jur, Evidence § 669.
[3, 5, 6] 20 Am Jur, Evidence § 662.
[7, 8] 20 Am Jur, Evidence §§ 450, 452.
[9, 10] 41 Am Jur, Physicians and Surgeons §§ 128, 131.
[9, 10] Liability of drugless practitioner for malpractice.   19 ALR
    2d 1188.

tice action against defendant, since it was not contemporaneous with, did not grow out of, and was not spontaneously evoked by the main fact of defendant's knowledge of the condition of decedent's breast and his statement that it was getting better.

5. EVIDENCE—RES GESTAE.

   *Res gestae* is defined as the facts which form the environment of a litigated issue; the things or matters accompanying and incident to a transaction or event.

6. SAME—RES GESTAE STATEMENTS.

   *Res gestae* statements are declarations growing out of the main fact, the litigated issue, and contemporaneous with it.

7. SAME—HEARSAY—SELF-SERVING STATEMENTS OF A DECEDENT.

   Hearsay and self-serving statements of a decedent are no less inadmissible by reason of their unquestioned genuineness and the fact that decedent could have testified to the ultimate facts therein stated had she been living at the time of the trial of action for malpractice.

8. SAME—HEARSAY—SELF-SERVING STATEMENTS OF A DECEDENT—FOREIGN STATUTES.

   A statute of another State under which certain hearsay and self-serving statements are rendered admissible there is without avail to render like statements, made in this State, admissible in an action at law herein.

9. PHYSICIANS AND SURGEONS—CHIROPRACTORS—MALPRACTICE—HYPOTHETICAL QUESTION—CIRCUMSTANTIAL EVIDENCE.

   Trial court's refusal to permit a chiropractor to testify on behalf of plaintiff in action for malpractice upon her decedent who had died following removal of cancerous breast, in answer to hypothetical question, based in part on circumstantial evidence that defendant treated decedent weekly for 4 years immediately preceding her operation, lack of proof that decedent suffered from ailments other than cancer during the period of her treatment, decedent's use of ice packs and salve and the condition of cancer existing at the time of her operation which should have been noticeable to the sense of touch for at least a year before, *held*, proper, since none of the facts disclosed justifies an inference that decedent consulted defendant about the condition of her breast or permitted him to examine it or that he undertook to treat or advise concerning it.

10. Same—Chiropractor—Malpractice—Directed Verdict—Breast Cancer.

Verdict was properly directed for defendant chiropractor in malpractice action, where it does not appear that plaintiff's decedent who died following removal of cancerous breast, had sought treatment for cancer during 4 years in which defendant treated her weekly or that her treatment of herself by use of ice packs and salve was done upon his advice.

Appeal from Calhoun; Steinbacher (Harold E.), J. Submitted April 7, 1954. (Docket No. 21, Calendar No. 45,848.) Decided June 7, 1954.

Action by Clara E. Case, administratrix of the estate of Ona A. Case, deceased, against G. P. Vearrindy, D. C., for malpractice. Directed verdict and judgment for defendant. Plaintiff appeals. Affirmed.

*Herbert C. Winsor* (*Hazen J. Hatch* and *Lenton G. Sculthorp*, of counsel), for plaintiff.

*Dwight W. Fistler*, for defendant.

Dethmers, J. This is a malpractice suit brought against a chiropractor. Plaintiff appeals from a directed verdict for defendant.

Testimony for plaintiff not objected to by defendant shows the following: Plaintiff's decedent went to defendant for weekly treatments from 1947 until January, 1951. In July of 1950 she was observed by her sister to be using an ice pack on her breast and massaging it with salve. On January 8, 1951, she went to a doctor of medicine, who discovered cancer in her breast which, in his opinion, should have been noticeable to her for at least a year. On January 13, 1951, she entered a hospital where she gave her medical history and it was made a part of the hospital record. Such history included her statement of

previous diseases and the time of onset of the present disease and previous care and treatment thereof, all of which was essential to the record and to proper diagnosis and determination of proper treatment. On January 15, 1951, the breast was removed and found to contain a large cancer. Later she entered another hospital and made a further statement of her medical history which was incorporated into the hospital record. She died on May 5, 1951. A doctor performed an autopsy. He testified that it disclosed cancer spread throughout the body, with the liver enlarged to twice normal size, and that the cancer was so large and stony hard that he thought it should have been readily noticeable to the sense of touch at least a year before her operation. He further testified that an operation at the time it was performed could only prove futile, but that one might have saved decedent's life a year earlier.

On trial plaintiff offered the 2 hospital records. Defendant objected to the portions thereof consisting of the history given by decedent as hearsay. The objection was sustained but a special record was taken of decedent's statements, made upon admission to the hospitals, to the effect that she had suffered much pain and been under treatment by defendant for over a year, that she had gone to the chiropractor in January, 1950, with a small lump in her breast and been advised that there was nothing bad about it and nothing should be done about it. Plaintiff assigns as error the exclusion thereof, relying on CL 1948, § 617.53 (Stat Ann § 27.902), which provides that records made as a memorandum of any act, transaction, occurrence or event, shall be admissible in evidence, if made in the regular course of business. Hospital records come within the purview of this statute. *Gile* v. *Hudnutt,* 279 Mich 358. Portions of hospital records which do not refer to acts, transactions, occurrences or events incident to the

hospital treatment, however, are hearsay and inadmissible. *Valenti* v. *Mayer,* 301 Mich 551. In point from *Sadjak* v. *Parker-Wolverine Co.,* 281 Mich 84, is the following:

"What decedent told the hospital authorities did not refer to any act, transaction, occurrence, or event in the hospital treatment. The portion of the record thus objected to was pure hearsay and of no evidentiary force and inadmissible. Also, see *Kelly* v. *Ford Motor Co.,* 280 Mich 378."

To the same effect, see *In re Nickel's Estate,* 321 Mich 519, and cases therein cited. The trial court's ruling was correct.

Plaintiff's next assignment of error goes to the trial court's exclusion from evidence of testimony by the doctor of medicine concerning the exclamation made to him by decedent when first he disclosed to her the serious condition of her breast and the necessity for immediate treatment. As appears from a special record, decedent replied to the doctor's disclosure, "No, I am not going to do anything about that, Dr. Vearrindy (defendant) says that is getting better." Plaintiff urges the admissibility thereof under the *res gestae* rule. In *People* v. *Giovannangeli,* 231 Mich 474, in holding a statement not admissible as part of the *res gestae,* we assigned as a reason therefor the following (p 478):

"The statement was not made coincident with the happening of the event to which it relates."

In *People* v. *Kayne,* 268 Mich 186, 191, we quoted with approval from *Stirling* v. *Buckingham,* 46 Conn 461, 464, 465, the following:

"*Res gestae* are the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character."

*Res gestae* is defined in Webster's New International Dictionary (2d ed) as "the facts which form the environment of a litigated issue; the things or matters accompanying and incident to a transaction or event." In defining *res gestae* Bouvier's Law Dictionary says, *inter alia,* "Declarations or acts, accompanying the fact in controversy and tending to illustrate or explain it, as conversations contemporaneous with the facts." *Res gestae* statements are declarations growing out of the main fact—the litigated issue—and contemporaneous with it. Here the main, litigated fact or issue which plaintiff seeks to prove by the statement in question is that the defendant chiropractor had known of the condition of decedent's breast and said that it was getting better. Decedent's exclamation to the doctor of medicine was not contemporaneous with, did not grow out of, and was not spontaneously evoked by that main fact. It was a part of the transaction and occurrence in the office of the doctor of medicine, not of anything which occurred between her and defendant. Not being a part of the main fact in controversy, it was not admissible.

Plaintiff claims error in the exclusion of letters written by decedent to her sister, which contained statements blaming defendant for her condition. Plaintiff urges in behalf of their admissibility that their genuineness was not questioned and that decedent could have testified to the ultimate facts therein stated if she had been living at the time of trial. These, if correct, do not alter the inadmissibility of hearsay and self-serving statements. Citation of a Massachusetts statute said to render such material admissible is without avail in Michigan where no such statute exists. The letters were properly excluded.

Finally, plaintiff says that the trial court erred in refusing to permit a chiropractor, called as a wit-

ness for plaintiff, to answer a hypothetical question based, in part, on circumstantial evidence in the case and directed to whether defendant, in his treatment of decedent, had employed the requisite degree of skill and care; and, further, that the court erred in disregarding such evidence, as plaintiff says, and, in consequence, directing a verdict for defendant. The circumstantial evidence upon which plaintiff relies in that connection may be summarized as follows: (1) defendant's weekly treatment of decedent for a period of 4 years immediately preceding her operation; (2) lack of proof in the record that decedent suffered from ailments other than cancer during the period of her treatment; (3) decedent's use of ice packs and salve; (4) the condition of cancer existing at the time of her operation which should have been noticeable to the sense of touch for at least a year before. None of these facts disclose or justify a reasonable inference that decedent consulted defendant about the condition of her breast, in any way apprised him of it, or permitted his examination thereof, or that defendant undertook to treat or advise concerning the same. By the same token they do not afford the basis for expression of an expert opinion as to whether defendant failed in any duty or brought and applied to the case less than that degree of care, skill, knowledge and attention commonly possessed and exercised by other chiropractors in that and like communities. Plaintiff cites *Janssen* v. *Mulder,* 232 Mich 183 (25 NCCA 248). There a patient suffering from diphtheria and high fever was brought to a chiropractor for treatment of her illness. Although he apparently did not recognize the identity of her malady, there was no question but that it was in relation to that and no other condition that he was being consulted and that he undertook treatment. On trial for malpractice he urged in his defense that his profession did

not assume to treat infectious and communicable diseases. This Court held that when such cases were presented to him for treatment, he might not be relieved from civil liability for (p 192) "neglect to exercise reasonable care and skill to ascertain whether the person seeking the services is so afflicted," and that he was under a duty to determine whether the ailment was of a type for which his treatment would be efficacious and, if not, to so advise in order that the patient might secure the services of one qualified to treat it. The distinction between the cases is that in *Janssen* the malady in question was shown to be the one for which the patient sought and received the defendant's treatment, while in the instant case the proofs do not show nor is there circumstantial evidence from which it may reasonably be inferred that the condition of decedent's breast or any of the cancerous symptoms were brought to defendant's attention or that he was given such an opportunity for examination as might have enabled him to discover and diagnose the condition. While there is testimony that it would have been noticeable upon a certain type of examination for at least a year, defendant had been treating decedent regularly for 4 years. There is nothing to suggest that the condition for which decedent sought defendant's treatment in 1947 was in anywise connected with the cancer which was discovered 3 or 4 years later. The reasonable inference to be drawn from admissible proofs is, rather, that defendant was treating decedent for some different condition in the first place. There is nothing in the record to support an inference that the treatment during the fourth year was not for the same condition as during the first. No inference may reasonably be drawn from decedent's use of ice packs and salve to the effect that it was done upon defendant's advice. Consequently, there were no admissible proofs upon

which to predicate the hypothetical question or sufficient to go to a jury touching malpractice by defendant.

Affirmed, with costs to defendant.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.