HENSON v. VETERANS CAB CO. OF FLINT

OPINION OF THE COURT

1. APPEAL AND ERROR—EXCEPTION TO RULING—COURT RULE.
   The need for formal exception to a court ruling has been abolished in Michigan by a court rule (GCR 1963, 507.5).

2. NEW TRIAL—DENIAL OF NEW TRIAL—APPEAL AND ERROR—BURDEN OF APPELLANT.
   A party seeking reversal of a trial court's order denying a new trial has the burden in the appellate court of showing: (1)

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 501.
[2] 5 Am Jur 2d, Appeal and Error § 677.
  Formal requirements of judgment or order as regards appealability. 73 ALR2d 250.
[3, 7] 5 Am Jur 2d, Appeal and Error § 624.
[3] Ruling on offer of proof as error. 89 ALR2d 279.
[4] 5 Am Jur 2d, Appeal and Error § 780.
[5, 8] 58 Am Jur, Witnesses § 643.
[6] 58 Am Jur, Witnesses §§ 620–622.
[8, 9] Admissibility, for purpose of supporting impeached witness, of prior statements by him consistent with his testimony. 75 ALR2d 909.
[9] 58 Am Jur, Witnesses § 688.
[10] 5 Am Jur 2d, Appeal and Error §§ 545–647.

that the ruling was erroneous, (2) that he opposed the ruling and contended for a proper ruling, and (3) that the erroneous ruling was prejudicial, so that the denial of his request for a new trial would be inconsistent with substantial justice (GCR 1963, 507.5, 529.1, 604).

3. APPEAL AND ERROR—OFFER OF PROOF—SEPARATE RECORD—DIRECT EXAMINATION—CROSS-EXAMINATION.

On direct or cross-examination, an offer of proof or a request to make a separate record will serve to show that counsel opposed the court's ruling and contended for a proper ruling.

4. APPEAL AND ERROR—PREJUDICE—PRESUMPTION—BURDEN OF APPELLANT.

The burden is on the appellant to show prejudice where the record does not show that the error was prejudicial, as a reviewing court will not presume prejudice.

5. WITNESSES — CROSS-EXAMINATION — EVIDENCE — WRITTEN DOCUMENT.

Generally, a witness may not be cross-examined as to the contents of a written document which is not produced, or which, although marked for identification, has not been offered in evidence and the rule would apply with greater force where the subject of the cross-examination is a specially excluded portion of a documentary exhibit.

6. WITNESSES—CROSS-EXAMINATION—RESTRICTION OF CROSS-EXAMINATION.

It cannot be supposed that the trial court would have prevented defendant's counsel from pursuing proper cross-examination of the plaintiff where plaintiff's counsel did not object to the question but moved for a mistrial claiming that defendant's counsel, while asking the question, was reading from a hospital record from which portions had been excluded from the jury's consideration and the trial court made clear to defendant's attorney that further effort to cross-examine plaintiff upon the excluded portions of the hospital record would not be permitted in denying the motion for mistrial; because, when the jury reconvened, defendant's counsel might well have laid the hospital record aside and restated his question.

CONCURRING OPINION
BLACK, J.

7. APPEAL AND ERROR—SAVING QUESTION FOR REVIEW—WITNESSES—
CROSS-EXAMINATION—SEPARATE RECORD—OFFER OF PROOF—OBJEC-
TIONS.

*The question of defense counsel being unduly restricted in his
right of cross-examination of plaintiff was not raised and saved
for review where the record fails to disclose that he asked
leave to make, either a separate record of whatever cross-ex-
amination he had in mind, or an offer of proof and to disclose
any objection to the trial judge's manifestly arbitrary take-
over of whatever cross-interrogation of plaintiff as was then
rightly due, after the judge told her what to say.*

8. WITNESSES—CROSS-EXAMINATION—PRIOR WRITTEN STATEMENT.

*It is unfair to cross-examine a witness as to the contents of a
writing made by him until the jury is informed of the precise
contents of the writing and thus warned against assuming con-
tradictions that do not really exist and which would also be
unfair to the witness because he may have explanations which
would not occur to him until his memory had been refreshed
by hearing the paper read.*

9. WITNESSES — IMPEACHMENT — CONTRADICTORY STATEMENTS —
LAYING FOUNDATION FOR IMPEACHMENT.

*To impeach a witness by proving contradictory statements, the
impeaching question must fix the time, place and person, the
language which it is claimed the witness used must be given
and he must be asked if he used it and the same question, so far
as the language is concerned, must then be asked of the im-
peaching witness.*

10. TRIAL—SEPARATE RECORD—ATTORNEY AND CLIENT—COURT RULE—
SAVING QUESTION FOR REVIEW—APPEAL AND ERROR.

*Counsel has the duty to insist courteously on his absolute right
to make in Michigan courts of record whatever record he
conceives necessary to protect the rights of his client and, if
that should be denied, then to make the desired record by
putting it in writing and, having attested it with the effect
provided by court rule, by filing it, or tendering it for filing,
in the clerk's office as a part of the court's record of the
action in trial and, where this was not done, the question was
not saved for review although, on oral argument in the Mich-
igan Supreme Court, counsel argued that he was intimidated
by the trial judge and thus prevented from making a record
of his complaints for possible review thereof (GCR 1963, 114.2).*

Appeal from Court of Appeals, Division 2, T. G. Kavanagh, P. J., and Quinn and Miller, JJ., reversing and remanding Genesee, Elza H. Papp, J. Submitted February 4, 1971. (No. 7 January Term 1971, Docket No. 52,471.) Decided April 5, 1971.

16 Mich App 219 reversed.

Complaint by Gladys Henson and Hubert Henson against Veterans Cab Co. of Flint and Eugene Leavy to recover for personal injuries. Verdict and judgment for plaintiffs. Veterans Cab Co. of Flint appealed to the Court of Appeals. Reversed and remanded for a new trial. Plaintiffs appeal. Reversed.

*Leitson, Dean, Dean, Segar & Hart, P. C.,* for plaintiffs.

*Howard C. Fisher,* for defendant Veterans Cab Co. of Flint.

T. E. Brennan, J. In this automobile negligence case, plaintiffs recovered a verdict in the amount of $12,500, and defendant Cab Company sought judgment notwithstanding the verdict or a new trial, both of which were denied. On appeal, the Court of Appeals reversed and remanded for a new trial on the ground that the trial judge had improperly restricted defendant's cross-examination of plaintiff. The pertinent portion of the trial transcript is as follows:

"*Q.* Now, when you entered the hospital, you were asked a number of questions by the personnel of the hospital, were you not?
"*A.* Yes, yes.
"*Q.* And in answer to the questions, did you explain to the hospital attendants that you had suf-

fered from chronic back pains ever since you were a child, and that this pain radiated up and down your spine?

"*Mr. Abram:* All right. Okay, your Honor. I am going to ask that the jury be excused. I'm sorry.

"*The Court:* Ladies and gentlemen, I think it's about time for a recess anyhow. Remember, don't talk about the case amongst yourselves or anyone. We haven't heard all the evidence yet. So take a short recess, please.

"(Whereupon the jury retired to its quarters, and the following proceedings were held outside its presence and hearing.)

"*Mr. Abram:* Your Honor, at this time, and despite the efforts and time that we have spent on this case, I'm going to move for a mistrial. I'm going to move for a mistrial for this reason: Mr. Fisher has a record there that he's been trying to get into the evidence, and improperly, during this whole trial. Dr. Gutow was on the stand and he asked Dr. Gutow if he made an entry—if he ever entered that. He said no. He could have shown it to him and then he could have explained it. He didn't do it. *Now Mr. Fisher picks that record up and is reading from it like it was in evidence in front of the jury.* I think that is improper evidence. The jury thinks it's part of the evidence.

"*The Court:* No, they don't, Mr. Abram. I can understand, and I do.

"And, Mr. Fisher, I am really surprised at you. Throughout this whole trial you have been pulling some grandstand plays. You have been in every way *attempting to put in things* where I have repeatedly told you not to.

"However, this is the fourth day of the trial, and I'm going to take your motion under advisement.

"*Mr Abram:* Thank you.

"*The Court:* I think this is a terrible, terrible waste of the jury's time, of the lawyer's time and of this Court's to not permit this to go to the jury.

"But, Mr. Fisher, this is the last time, and the last time that I intend to permit you to do what you have been doing.

"*Mr. Fisher:* If the Court please, I submit that this is cross-examination and I contend it's proper. I have asked a question—

"*The Court:* She doesn't know who wrote that or what they put down.

"Let me just ask you one question, Mrs. Henson. *Was that paper ever shown to you* by the person who took it down—

"*The Witness:* No.

"*The Court:* All right. —so that you could make any corrections or additions?

"*The Witness:* No.

"*The Court:* All right.

"*Mr. Fisher:* Well, if the Court please, *naturally this paper couldn't be shown to her.* This was—

"*The Court:* All right, Mr. Fisher, you get the person who took that down in here as a witness so that they can be properly cross-examined. Then you might be able to start *cross-examining Mrs. Henson on it.* Now, that's the proper way of doing it. You get the person who actually wrote that down there so that it gives your opposition an opportunity to cross-examine that particular person. And then, when you have laid that foundation, then and only then can you then *question Mrs. Henson on it.*

"We will take a short recess.

"(Short recess.)

"(Whereupon the following proceedings were resumed within the presence and hearing of the jury.)

"*The Court:* May I just inquire. You have one more witness, Mr. Henson; is that right, or how many?

"*Mr. Abram:* Two more witnesses, your Honor.

"*The Court:* Oh, two more.

"*Mr. Fisher:* No other questions.

"*The Court:* You may proceed, Mr. —

"*Mr. Fisher:* No other questions, your Honor.

"*Mrs. McKenna:* I want to question.
"*The Court:* You may.
"*Mrs. McKenna:* Thank you.
"*The Court: You are through cross-examining, Mr. Fisher?*
"*Mr. Fisher: Yes.*
"*The Court:* All right." (Emphasis added.)

Plaintiffs-appellants urge in this Court that the action of the trial judge in preventing defendant's counsel from cross-examining plaintiff in the manner attempted, if error, was not prejudicial, and that defendant had the obligation to seek and to make a separate record of the matter sought to be proven by the excluded cross-examination. Defendant points to GCR 1963, 604, which provides as follows:

"If an objection to a question propounded to a witness is sustained by the court, the examining attorney may make a specific offer of what he expects to prove by the answer of the witness, or by leave of court, may examine the witness in relation thereto. The court may require the offer to be made or the testimony taken out of the hearing of the jury. The court may add such other or further statement as clearly shows the character of the evidence, the form in which it was offered, the objection made and the ruling thereon."

Defendant-appellee contends that Rule 604 does not apply to cross-examination, pointing out that the cross-examiner often does not know what the answer to his question will be, and it is, therefore, unreasonable to expect a cross-examiner to make a specific offer of what he expects to prove by the answer of the witness.

At common law, the party complaining of any ruling of the court on a matter of law or procedure during the process of the trial must take an excep-

tion thereto in order to secure the right to have the propriety of such ruling reviewed on appeal or writ of error. 3 Am Jur, Appeal and Error, § 272, pp 47, 48. In Michigan, the need for formal exception to a court ruling was abolished by statute, CL 1948, § 618.60 (Stat Ann § 27.1040), which read as follows:

"Sec. 60. It shall not be necessary in the trial of any action or proceeding in any court of record, to except to any ruling or action of the court, if an objection thereto was duly made, but an exception shall be deemed to follow as a matter of course, and it shall not be necessary to except in any case to the charge of the court to the jury, or to the refusal of the court to charge as requested; but any party considering himself aggrieved by any such ruling, action, charge or refusal to charge, may assign errors the same as if exception had been made according to the practice heretofore in use."

This statutory provision was repealed at the time of the adoption of the Revised Judicature Act in 1963. In its place, this Court adopted GCR 1963, 507.5, providing as follows:

".5 Exceptions Unnecessary. Formal exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party, at the time of [*sic*] the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor; and, if a party has no opportunity to object to a ruling or order at the time it is made, the absence of the objection does not thereafter prejudice him."

Also bearing on the question is GCR 1963, 529.1. It provides:

".1 Harmless Error. No error in either the admission or the exclusion of evidence and no error or

defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding shall construe these rules to secure the just, speedy, and inexpensive determination of every action so as to avoid the consequences of any error or defect in the proceeding which does not affect the substantial rights of the parties."

Reading these three rules together,* we conclude that a party seeking reversal of the trial court's order denying a new trial has the burden in the appellate court of showing (1) that the ruling was erroneous, (2) that he opposed the ruling and contended for a proper ruling, and (3) that the erroneous ruling was prejudicial, so that the denial of his request for a new trial would be inconsistent with substantial justice.

In the discharge of this responsibility, counsel are aided by the permissive provisions of Rule 604. Whether on direct or cross-examination, an offer of proof or a request to make a separate record will serve to show that counsel opposed the court's ruling and contended for a proper ruling. Where the record does not show that the error was prejudicial, the reviewing court will not presume prejudice. The burden is on the appellant to show prejudice.

The principles thus stated are not so easily applied to the case at hand. The question which defendant's attorney asked and which he claims he was not permitted to pursue was as follows:

"*Q. [By Mr. Fisher]* And in answer to the questions, did you explain to the hospital attendants that

---

* GCR 1963, 604, 507.5, 529.1.

you had suffered from chronic back pains ever since
you were a child, and that this pain radiated up and
down your spine?"

Plaintiff had alleged as damages that she suffered
an injury to her back. The nature and extent of her
pre-existing back problems, if any, were certainly in
issue, and there could be no question of counsel's
right to inquire into her prior history or back pain.
Moreover, there would be no doubt of counsel's right
to inquire whether on a previous occasion the plain-
tiff had made an extrajudicial admission on the
subject of her back condition.

If we were dealing with a simple objection to the
question propounded, and a ruling of the trial court
sustaining that objection, it may well be argued that,
the question being proper and relevant, prejudice
in its exclusion is apparent on the record.

The Court of Appeals treated the matter in pre-
cisely that way.

But this is not such a case. Plaintiffs' counsel did
not object to the question. Rather, he asked that
the jury be excused, and in their absence moved for
a mistrial.

Plaintiffs' counsel claimed that defendant's coun-
sel was—while asking the cited question—reading
from a hospital record. That hospital record had
been admitted in evidence at a pre-trial conference,
but not in its entirety. Excluded from the jury's
consideration, were those portions of the hospital
record which were inadmissible as not being within
the purview of the business entries exception to the
hearsay rule. *Valenti* v. *Mayer* (1942), 301 Mich
551, *Case* v. *Vearrindy* (1954), 339 Mich 579, and
other Michigan decisions hold this to be the proper
procedure when hospital records are admitted in evi-
dence under MCLA § 600.2146 (Stat Ann 1962 Rev
§ 27A.2146).

The substance of plaintiffs' request for a mistrial was therefore, that irrespective of the propriety of defendant's question, the manner in which he asked the question was calculated to convey to the jury the impression that the hospital record contained evidence that Mrs. Henson had in fact made the statement contained in counsel's leading question.

As a general rule, a witness may not be cross-examined as to the contents of a written document which is not produced, or which, although marked for identification, has not been offered in evidence. 58 Am Jur, Witnesses, § 643, p 356.

Certainly, the rule would apply with greater force where the subject of the cross-examination is a specially excluded portion of a documentary exhibit.

The trial judge denied plaintiffs' motion for mistrial. In doing so, she made clear to the defendant's attorney that further effort to cross-examine Mrs. Henson *upon the excluded portions of the hospital record*, would not be permitted.

When the jury reconvened, defendant's counsel might well have laid the offending exhibit aside and restated his last question to Mrs. Henson. That question was never objected to, and it cannot be supposed that the trial court would have prevented counsel from pursuing proper cross-examination in the absence of improper display of the hospital record.

The decision of the Court of Appeals is reversed and the order of the trial court, denying defendant's motion for a new trial, is affirmed. Costs to plaintiffs-appellants.

T. M. Kavanagh, C. J., and Adams, Swainson and Williams, JJ., concurred with T. E. Brennan, J.

Black, J. (*concurring in result*). Two questions posed by the defending cross-examiner caused all

these trial and appellate misadventures.[1]   The dual
questions, and the direct examiner's response which
led to the summary hearing at chambers, follow:

"*Q.* Now, when you entered the hospital, you were
asked a number of questions by the personnel of the
hospital, were you not?
"*A.* Yes, yes.
"*Q.* And in answer to the questions, did you ex-
plain to the hospital attendants that you had suf-
fered from chronic back pains ever since you were
a child, and that this pain radiated up and down
your spine?
"*Mr. Abram:* All right.  Okay, your Honor.  I am
going to ask that the jury be excused.  I'm sorry."

Then came the at-chambers motion by plaintiffs'
counsel for an order of mistrial, and the rather
abrupt and admonitory proceedings Justice Bren-
nan has recorded.   The appellate difficulty is that
the record fails to disclose that counsel asked leave
to make, either a separate record of whatever cross-
examination he had in mind or an offer of proof.
And it fails to disclose any objection to the trial
judge's manifestly arbitrary take-over of whatever
cross-interrogation of the witness-plaintiff as was
then rightly due, *after* the judge told her what to say.

Returning now to the courtroom, when the jury
was present and the quoted questions were put to
the witness-plaintiff:  If as alleged the cross-exam-
iner had in flourishing hand some document he pro-
posed to employ, his second question was quite out
of order.   The record does not disclose that the
document in hand had been marked for identifica-
tion.   It fails to show that the document had been

---

[1] See the opinion of Division 2 (16 Mich App 219), holding that
defense counsel was unduly restricted in his right of cross-examination.
I find that no such question was raised and saved for review.

signed or otherwise attested by the witness.[2]   It
fails to reveal that the document had been shown
to the witness, prior to the two beginning questions,
and fails to inform that counsel was aiming other
than at the making up of a foundation for the intro-
duction of impeaching testimony (by some hospital
attendant or attendants).

*First:* We should not forget that the rule laid
down in *People* v. *Dellabonda* (1933), 265 Mich 486,
508, is still the law; also that it appears high time
that a few counsel and perhaps a few trial judges
be apprised of that fact.   The rule (*Dellabonda* at
508):

"This court is firmly committed to the doctrine of
*Queen's Case* [1820], 2 Brod. & Bing. 284, 286 (129
Eng. Repr. 976), which case is the basis of the rule
stated in 1 Greenleaf on Evidence (16th Ed.), § 463,
that it would be unfair to cross-examine a witness
as to the contents of a writing made by him until the
jury were informed of the precise contents of the
writing, and thus warned against assuming contra-
dictions that do not really exist and which would
also be unfair to the witness because he may have
explanations which would not occur to him until his
memory had been refreshed by hearing the paper
read.   *Lightfoot* v. *People* [1868], 16 Mich. 507;
*Hamilton* v. *People* [1874], 29 Mich. 195; *Toohey* v.
*Plummer* [1888], 69 Mich. 345; *DeMay* v. *Roberts*
[1881], 46 Mich. 160 (41 Am. Rep. 154)."

*Second:* As suggested above, counsel's second
question was objectionable for another reason.   The
question failed to comply or hint at beginning com-

---

[2] See Justice Cooley, writing in the *Van Steinburg* case (1868) 17
Mich 99, 108, 109:
"The circuit judge, I think, was right in ruling out the question
put to the plaintiff, on cross-examination, as to what he knew about
a statement of some sort, which counsel held in his hand, and
which was in no manner brought home, either to the plaintiff, or
to anybody else."

pliance with that rule which, as far back as 1875, was laid down in *De Armond* v. *Neasmith,* 32 Mich 231, 232 and expounded later *sua sponte* in *Rice* v. *Rice* (1895), 104 Mich 371.   To quote *Rice* at 378, 379:

"In view of a new trial, we deem it proper to remark that the proper method of impeachment by proving contradictory statements was not pursued in this case.   Time, place, and person must be fixed by the impeaching question.   The language which it is claimed the witness used must be given, and he asked if he used it.   The same question, so far as the language is concerned, must then be asked of the impeaching witness.   *De Armond* v. *Neasmith* [1875], 32 Mich. 231.   In this case Mrs. Owens was asked to state the conversation she had with Mrs. Rice at the time and place fixed in the impeaching question.   As already shown, she introduced other matter, about which no inquiry had been made of Mrs. Rice.   In *De Armond* v. *Neasmith* it is said:

" 'When an attempt is made to impeach a witness, there should be no reasonable doubt but that the questions asked the impeaching witness and the witness sought to be impeached are one and the same. It is so easy for witnesses to misunderstand each other, or to forget what was really said, that there should be no chance for dispute in this respect. Fairness to both requires this.'

"The unfairness of the opposite course is well illustrated in this case.   It is fair to remark that no objection to the course pursued was made."[3]

I would reverse and remand for entry of judgment affirming the judgment of the trial court, and for an award of costs to plaintiff.

---

[3] For former Attorney General and later Justice Potter's detail of this rule, see Potter, Michigan Evidence Civil and Criminal (1920), § 318, "Laying the Foundation for Proof of Inconsistent Statements.", pp 528–530.

Although it will amount to mere dicta supported by but one Justice, I too "deem it proper to remark" a bit concerning this at-chambers hearing.

It may be that counsel was intimidated by the trial judge, and thus prevented from making a record of his complaints for possible review thereof. Such at least was the conveyed sense of his oral argument, in response to questions presented from the bench. Accepting the fact as alleged for discussional purposes, it was nonetheless the duty of counsel to insist courteously on his *absolute right* to make in our courts of record whatever record he conceives necessary to protect the rights of his client and, if that should be denied, then to make the desired record by putting it in writing and, having attested it with the effect provided by GCR 1963, 114.2, by filing it (or tendering it for filing) in the clerk's office as a part of the court's record of the action in trial. That was not done here, hence this reluctant vote to reverse and remand.

T. G. Kavanagh, J., did not sit in this case.